# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BRISTOL, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 09-4155 |
| E. T. SETTLE, et al., | : |
| Defendants. | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                         **MARCH 25, 2011**

Presently before the Court is Defendant, Correctional Officer E.T. Settle's ("Officer Settle"), Motion for Summary Judgment against Plaintiff, Michael Bristol ("Bristol"). For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

Bristol filed this action against Officer Settle and Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections ("Beard"), pursuant to 42 U.S.C. § 1983 ("Section 1983")[1] asserting claims under the Eighth and Fourteenth Amendments. Beard filed a Motion to Dismiss on November 3, 2009. On January 12, 2010, this Court granted the Motion and

---

[1]Section 1983 provides in relevant part that :

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . [or] suit in equity.

42 U.S.C. § 1983.

dismissed all claims against Beard.

Bristol is an inmate at the State Correctional Institution ("SRI") at Graterford, Pennsylvania ("Graterford"), and is serving an 18 to 60-month sentence for possession with intent to deliver. (Bristol Dep. at 7-8.) He has been incarcerated at Graterford since March 27, 2009, and was assigned to its E-Block section. (Id. at 119-120.) Officer Settle is a Correctional Officer at Graterford. Inmate, Dale Schaeffer ("Schaeffer") became Bristol's cell mate on April 1, 2009. (Id. at 76.) Bristol asserts that on April 2, 2009, at approximately 1:30 p.m., a group of five or six inmates came to his cell and asked if he was "Bristol." When he responded that he was, these inmates opened his cell door and while calling him a "child molester" assaulted him by punching and kicking him. (Id. at 80-82.) The assault lasted approximately 20-40 seconds after which the attackers left the cell. (Id. at 92.) After the assault, Bristol located a correctional officer, and subsequently, at least a half dozen officers responded to the incident. Bristol was taken to the prison infirmary. (Id. at 94-95.) At the infirmary, Bristol received stitches to his right eye and lower lip. He also sustained an abrasion on his right knee. (Id. at 107.) Bristol did not know or recognize any of his attackers, and Schaeffer, who was the only witness to the assault, was apparently on his bed when it occurred. (Id. at 82-83, 92, 99.) That night, both Bristol and Schaeffer were reassigned to Graterford's Restricted Housing Unit ("RHU"). It was in the RHU that Bristol first learned that Schaeffer apparently had been convicted of a sex crime(s) involving children. (Id. at 77, 104.)

Bristol asserts that prior to the assault, Officer Settle had referred to Schaeffer in front of other inmates as a "child molester," and that when the group of inmates came into his cell, they mistakenly believed that he was Schaeffer. (Compl. ¶¶ 6,10.) Bristol further asserts that,

2

approximately one week after the incident, Officer Settle came to his cell and told him that the beating was supposed to be for Schaeffer. (Pl.'s Resp. Mot. Summ. J. at 2.) Bristol asserts in a "Verified Statement" that to the best of his recollection, he was held in protective custody for "12 or 13 days after the assault." (Id. at Ex. A.) He stated that he was then transferred to the SCI at Camp Hill, and there he "was unable to have contact with others for several days because I was in new processing as a new inmate at that prison." (Id.) Bristol also stated that he did not receive an "Inmate Handbook" there, nor did he receive any information concerning the grievance procedure. (Id.)

Bristol testified at his deposition that he had prepared a handwritten letter in May 2009 to give to his attorney concerning the chronological events preceding the assault, the assault itself, and the events following the assault. (Id. at 151-152.) Bristol added that he wrote it alone without input from any other individuals. (Id. at 152.) Bristol testified that he wrote that on April 1, 2009, that when Schaeffer was being processed at the prison "intake area," Officer Settle basically announced the nature of Schaeffer's crimes in front of other inmates that were present by saying sexually explicit statements to him, including calling him a "child molester." (Bristol Dep. at 153.) Bristol, however, testified that he was not present in the "intake area" when this happened, but that Schaeffer told him this when they were cell mates in the RHU after the assault. Bristol then acknowledged at his deposition that when he wrote this letter he stated that he "believed" that Schaeffer told him that Officer Settle called him a "child molester," but was not "100 percent positive." (Id. at 154.) He added that he wrote "believed" in the letter because he was not able to confirm this conversation with Schaeffer when he wrote the letter. (Id. at 155.)

3

Officer Settle testified that he was assigned to the intake area in question on April 1, 2009, but did not remember having any contact with Schaeffer. (Settle Dep. at 11, 15.)

Officer Settle testified:

> Q. Have you ever had contact with an inmate by the name of Dale Schaeffer, who we reference in the complaint?
>
> A. I don't recall. I don't remember.
>
> Q. Have you ever referred to Mr. Schaeffer as a child molester?
>
> A. No.
>
> Q. Have you ever used the term child molester while you were working here at Graterford?
>
> A. No.
>
> Q. Have you ever discussed Mr. Schaeffer or Mr. Bristol with other inmates?
>
> A. No.
>
> Q. Now, Now, you reviewed the complaint, right?
>
> A. Yes.
>
> Q. Now, I take it from what you– I take it from what you tell me that Mr. Bristol's allegation that you directed other inmates to, shall we say, beat up Mr. Schaeffer because he was a child molester, is it your position that's a fabrication, a lie?
>
> A. It is a lie.

(Id. at 11-12.) Officer Settle also stated that he was off duty on April 2, 2009, the day of the assault, and that he normally worked on L-Block and not E-Block where the assault occurred. (Id. at 8, 18.) Bristol acknowledged that he never filed a grievance concerning the assault, and that he was unaware of the grievance procedure until the end of May 2009 when another inmate

4

told him about it while he was at the SCI at Camp Hill. (Bristol Dep. at 181, 184.) Bristol further testified that even after becoming aware of the grievance procedure, he never attempted to file a grievance concerning the assault because the inmate at Camp Hill told him that it had to be filed within two weeks of the incident, and it was past that time. (Id. at 184-185.) Graterford's Grievance Coordinator, Wendy Shaylor, investigated whether Bristol exhausted the grievance procedure and determined that Bristol never even submitted an initial grievance. (Shaylor Decl. ¶¶ 8, 10-11.)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. Failure to Exhaust State Remedies

The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> **(a) Applicability of administrative remedies**
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e.

In Woodford v. Ngo, the United States Supreme Court determined that exhaustion of administrative remedies is "no longer left to the discretion of the district court, but is mandatory." 548 U.S. 81, 85 (2006); see also Booth v. Churner, 532 U.S. 731, 739 (2001). The Court further stated that prisoners must now exhaust all "available" remedies, not just those that meet federal standards, and also must exhaust administrative remedies even where the relief sought-monetary

damages-cannot be granted by the administrative process. Id. Moreover, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. Id.; see also Porter v. Nussle, 534 U.S. 516, 532 (2002).

In Williamson v. Wexford Health Sources, Inc., the Third Circuit noted that the Department of Corrections' inmate grievance procedure, "outlined in ADM 804, involves three stages of review." 131 Fed.Appx. 888, 890 (3d Cir. 2005). The court summarized:

> An initial grievance must be submitted to a Grievance Coordinator within 15 working days after the events upon which the claims are based. DC-ADM 804 § VI.A.1.h. An inmate has 5 working days to appeal the Grievance Coordinator's decision to the Facility Manager or Superintendent of the local prison. *See id.* at § VI.C.1.b. Once the intermediate decision is made, the inmate has 5 working days from the date the decision was received to file a final appeal with the Secretary's Office of Inmate Grievances and Appeals. *See id.* at § VI.D.1.b.

Id.

Failure to exhaust is an affirmative defense that must be proven by Officer Settle. Jones v. Bock, 549 U.S. 199, 216 (2007). Here, as noted, Graterford's Grievance Coordinator, Wendy Shaylor, investigated whether Bristol exhausted the grievance procedure and determined that not only did he not exhaust the grievance process, but Bristol never even submitted an initial grievance. (Shaylor Decl. ¶¶ 8, 10-11.)

Bristol admits to never filing a grievance concerning the assault. (Bristol Dep. at 181.) Bristol contends that he was unaware of the grievance process until the end of May 2009, when he learned of such while at SCI-Camp Hill. (Id. at 184.) He also claims to have never received a copy of the inmate handbook although he has seen one. (Id. at 184.) Bristol also acknowledged that even after becoming aware of the grievance process, he never attempted to file a grievance

7

concerning the assault. (Id. at 184-185.)

Bristol cites Kaba v. Stepp, 458 F.3d 678 (7th Cir. 2006) in support of his position that where an inmate is denied reasonable access to the grievance process by the Commonwealth, the exhaustion requirement under the PLRA should be excused. Here, however, there is no indication that Bristol was denied access to the grievance process. He merely asserts that he didn't know about the process until at least a month after the assault because he was isolated in protective custody for at least twelve days after the assault, and then was transferred to Camp Hill. He, however, offers no explanation why he didn't at least attempt to file a grievance when he did find out about the process asking that the 15-day rule to file a grievance be excused for these reasons. Accordingly, Summary Judgment for Officer Settle could be granted on this basis alone. Nonetheless, we will address Bristol's claims on their merits as well.

**B.    Deliberate Indifference**

The Eighth Amendment, as incorporated through the Fourteenth Amendment, places restraints and imposes duties on prison officials. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Not only must prison officials not use excessive force against prisoners, but they must affirmatively "take reasonable measures to guarantee the safety of the inmates." Id. In particular, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. (citation omitted). However, a prison official who fails to prevent harm to an inmate violates the Eighth Amendment only when two requirements are met: 1) the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm; and 2) the inmate must show that the prison official's state of mind was one of "deliberate indifference" to inmate health or safety. Id. at 834. In addition, in order to prevail, the inmate is required to

produce sufficient evidence of causation. Farmer, 511 U.S. at 825; LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993), cert. denied, 510 U.S. 1164 (1994).

An official is deliberately indifferent only if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "[A] defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

To survive summary judgment on a deliberate indifference claim, a plaintiff must "present enough evidence to support the inference that the defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 133. That is, circumstantial evidence can be employed to prove that "the excessive risk was so obvious that the official must have known of the risk." Id.

In the instant matter, we find that Bristol's "deliberate indifference" claim against Officer Settle should be dismissed for several reasons. We first note that when deciding a motion for summary judgment, courts may not consider evidence that would be inadmissible at trial. See Pamintuan v. Nanticoke Mem. Hosp., 192 F.3d 378, 387 n. 13 (3d Cir. 1999); see also Williams v. Empire Funding Corp., No. 97-4518, 2004 WL 1126279, at * 1 (E.D.Pa. Apr. 18, 2004).

9

Here, the record reflects that Officer Settle's alleged references to Schaeffer as a "child molester" are clearly hearsay statements. In fact, Bristol does not dispute that these statements are hearsay, and also does not argue that there is an exception to the hearsay rule that is applicable here that would allow them to be admitted into evidence at trial. Rather, Bristol simply asserts that the "Rules of Civil Procedure do not require that the same standards are applicable to a motion as they would be at trial. Furthermore, affidavits and verified statements are admissible in a response to a motion for summary judgment. See Federal Rule of Civil Procedure 56." (Pl.'s Resp. Mot. Summ. J. at 8.) In this record, however, there are no depositions, affidavits, declarations, or other evidence to support the hearsay. Most significantly, Bristol, himself, cannot support the hearsay statements with his own deposition testimony. As noted earlier, Bristol testified that he only "believed" that Officer Settle called Schaeffer a "child molester." He candidly testified:

> Q. And then also in here [the letter], you say "I believe CO Settle also called Mr. S. [Schaeffer] a child molester." Why did you say "I believe?"
>
> A. Because I wasn't certain whether Schaeffer had told me that or not. I believe he did, but I wasn't 100 percent positive at the time. At the time I wrote this, Mr. Schaeffer was nowhere around me. I had no way of asking him to double check, confirm it. So this is without confirmation.

(Bristol Dep. at 155-156.) As noted, to survive summary judgment on a deliberate indifference claim, Bristol must "present enough evidence to support the inference that the defendants 'knowingly and unreasonably' disregarded an objectively intolerable risk of harm," Beers-Capitol, 256 F.3d at 133. We find that Bristol cannot do so by only asserting that he "believed" that Officer Settle made the "child molester" statements to Schaeffer in front of other inmates.

10

(Bristol Dep. at 156.) We, thus, find that Bristol has submitted insufficient evidence for a jury to decide a "deliberate indifference" issue.

Moreover, Bristol cannot establish "causation" of his injuries. Farmer, 511 U.S. at 825. Officer Settle asserts that the case of Law v. Tillman, No. 98-00781BHL, 2001 WL 103304, at *1 (S.D. Ala., Jan. 31, 2001) is analogous to the instant case. We agree. In Law, plaintiff filed a complaint for injuries suffered in an assault by other inmates. Plaintiff alleged "deliberate indifference" to his safety after a correctional officer called him a "snitch" in the presence of other inmates. Id. at 1. The court determined that while the plaintiff's affidavit may be sufficient to create a jury issue as to the elements of deliberate indifference, it was not sufficient evidence on the element of causation. Id. at 6. The court granted summary judgment finding that plaintiff's only evidence which consisted of his conclusory statement in the complaint and his affidavits that the correctional officer's statement caused the attack was not a sufficient showing on the essential element of causation. Id.

Here, Bristol has submitted even less evidence to support causation between Officer Settle's alleged "deliberate indifferent" actions and his injuries. Unlike the plaintiff in Law, the alleged statements in this case were said about another inmate, Schaeffer. Even if we accepted as fact that Officer Settle made the "child molester" comments to Schaeffer in front of other inmates, it could be argued that such comments constituted an objectively excessive risk to Schaeffer's health and safety, but not to Bristol's heath and safety. There is no evidence in the record that indicates that Officer Settle could have foreseen or known that statements made to Schaeffer posed a substantial risk to Bristol. Thus, Bristol cannot establish that Officer Settle's alleged reference to Schaeffer as a "child molester" caused his injuries. Accordingly, for these

reasons, we granted summary judgment in favor of Officer Settle.

## C. State Law Claims

Officer Settle also argues that any and all state law claims, including assault and battery, negligence, and gross negligence, are barred by the doctrine of sovereign immunity.[2] By statute in Pennsylvania, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall . . . enjoy sovereign and official immunity . . . except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S.A. § 2310; See also Shoop v. Dauphin County, 766 F. Supp. 1327, 1333-34 (M.D. Pa. 1992), aff'd, 945 F.2d 396 (3d Cir. 1991), cert. denied, 502 U.S. 1097 (1992). In his Response to this Motion, Bristol does not specifically address separate state law tort claims, but only generally argues that Officer Settle is not entitled to sovereign immunity because he was not acting "within the scope of his duties" when he made the remarks in question to Schaeffer which resulted in the assault. (Pl.'s Resp. Mot. Summ. J. at 9.)

We, however, dismiss any such state law claims on the same basis that we denied Bristol's "deliberate indifference" claim. We again find that Bristol has failed to offer sufficient evidence to support any such claims. As noted above, this record contains no depositions, affidavits, declarations, or other evidence to support Bristol's allegations concerning Officer Settle's actions. At best, Bristol has only offered his own speculative testimony that he "believed" Schaeffer told him that Officer Settle called him a "child molester" in the presence of

---

[2]Our review of the Complaint, however, does not reveal that Bristol, specifically, has brought state law tort claims against Officer Settle. Bristol only states in his Complaint that we have "jurisdiction under the Civil Rights Act, 42 U.S.C.A. 1983, and pendent jurisdiction to consider claims arising under state law." (Compl. ¶ 4.) Bristol does not aver specific counts for state law tort claims. Nonetheless, we will briefly address the issue of state law claims and the doctrine of sovereign immunity.

other inmates, but he was not "certain." (Bristol Dep. at 155-156.) This is simply not enough to withstand a motion for summary judgment, and we grant such with regard to any state law claims as well.

      An appropriate Order follows.